FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2021 FEB -3 PM 1:28

UNITED STATES OF AMERICA

v.

Case No.: 3:21-cr-9-HES-JRK
18 U.S.C. § 1349

GRETCHEN MICHELE CAMP

## INFORMATION

The United States Attorney charges:

### COUNT ONE
(Conspiracy to Commit Wire Fraud – Tax Refund Diversion Scheme)

**A. Introduction**

At times material to this Information:

1. The defendant, Gretchen Michele Camp, was a resident of Yulee, Florida, in the Middle District of Florida. Camp was employed by Swisher International, Inc. (Swisher) in its Tax Department. In or around September 2013, Camp became the Senior Tax Accountant for Swisher. As part of her job responsibilities, Camp was authorized to prepare and submit claim forms relating to the refund to Swisher of federal tobacco excise taxes and to approve certain payments to be made by both Swisher and its sister company, E-Alternative Solutions (EAS).

2. Swisher was a business located in Jacksonville, in the Middle

District of Florida, which manufactured, produced, and sold a variety of products domestically and internationally to include cigars, cigarillos, smokeless tobacco, and rolling papers. EAS was a sister company to Swisher that provided an electronic alternative to cigarettes and was co-located at the Swisher facility in Jacksonville, Florida.

3. Swisher, as part of its business operations, was regularly taxed by the United States Department of the Treasury, Alcohol and Tobacco Tax and Trade Bureau (TTB). Tax revenues were collected by the TTB's National Revenue Center (NRC). Swisher calculated and paid these federal excise taxes on cigars before shipping them to customers. If cigars were damaged, withdrawn, or otherwise not sold, the previously paid federal excise taxes were refundable.

4. As part of the refund process, Swisher submitted claims on Form Number –TTB F 5260.8 (claim form) and could elect whether to receive the tax refund in the form of a tax credit or a cash refund paid directly to Swisher's account.

5. Co-conspirator R.C. was a resident of Yulee, Florida. R.C. and Camp held joint bank accounts at Bank of America, with an account number ending in -2165 (BOA 2165), and at PNC with an account ending in -8074 (PNC 8074). The PNC account was a clearing account for a joint account ending in -5205 held by Camp and R.C. at Charles Schwab (Schwab 5205).

### B. The Conspiracy

6. Beginning in or about September 2014, and continuing through and including in or about October 2018, in the Middle District of Florida, and elsewhere, the defendant,

**GRETCHEN MICHELE CAMP,**

did knowingly and willfully combine, conspire, confederate, and agree with R.C., and others, both known and unknown to the United States, to execute and attempt to execute a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, by transmitting and causing to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of 18 U.S.C. § 1343.

### C. Manner and Means of the Conspiracy

7. The manner and means by which the defendant and her co-conspirators sought to accomplish the purpose of the conspiracy included, among other things:

   a. It was part of the conspiracy that Camp would and did prepare and submit tax forms for her employer, Swisher.

   b. It was further part of the conspiracy that Camp would and did

materially alter and change the tax forms that she submitted on behalf of her employer so that the tax refunds due and owing to Swisher were diverted to BOA 2165, over which Camp and co-conspirator R.C. maintained custody and control, without Swisher's knowledge or consent.

        c.       It was further part of the conspiracy that Camp would and did materially alter and change a tax form that she submitted on behalf of her employer so that the tax refund due and owing to Swisher was diverted to PNC 8074, over which Camp and co-conspirator R.C. maintained custody and control, without Swisher's knowledge or consent.

        d.       It was further part of the conspiracy that Camp would and did, on some of the tax forms for her employer, check the box designated "Allowance of Credit for Tax" and, after securing a signature from her supervisor on the form, fraudulently and falsely alter the form by removing that check and then checking the box, "Refund of Tax." Camp would and did then list BOA 2165 on the form as the account into which the refund should be deposited.

        e.       It was further part of the conspiracy that, in other instances, Camp would and did check the box labeled "Refund of Tax" on the claim form for her employer and then falsely and fraudulently identify BOA 2165 as the account into which the refund should be directed.

        f.       It was further part of the conspiracy that Camp and co-

conspirator R.C. would and did share in the proceeds of the fraud and make purchases using the fraudulently obtained funds, including real property, vehicles, firearms, jewelry, and collectibles, among other things.

      g.    It was further part of the conspiracy that the conspirators would and did perform acts and make statements to hide and conceal and cause to be hidden and concealed the purpose of the conspiracy and the acts committed in furtherance thereof.

All in violation of 18 U.S.C. § 1349.

## COUNT TWO
### (Conspiracy to Commit Mail Fraud – Fraudulent Invoice Scheme)

### A. Introduction

1.    The allegations and information set forth in Paragraphs One through Five of Count One of this Information are realleged and incorporated by reference as if fully set forth herein.

2.    Co-conspirator J.G. was a resident of Macon, Georgia and friend of R.C.. J.G. owned and operated Lodge and Anchor LLC (Lodge and Anchor), a shell company with no legitimate business dealings with Swisher or EAS. J.G. maintained bank accounts in the name of Lodge and Anchor at various financial institutions, over which J.G. maintained custody and control.

3.    The conspirators used a pawnshop (Pawn Shop), which was a pawn and retail store located in Macon, Georgia. The Pawn Shop had no legitimate

5

business dealings with Swisher or EAS.

### B. The Conspiracy

4. Beginning on an unknown date, but at least as early as in or about November 2015, and continuing through and including in or about December 2018, in the Middle District of Florida, and elsewhere, the defendant,

**GRETCHEN MICHELE CAMP**,

did knowingly and willfully combine, conspire, confederate, and agree with R.C., J.G., and others, both known and unknown to the United States, to execute and attempt to execute a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, by using and causing to be used the United States mail and private and commercial interstate carriers, for the purpose of executing such scheme and artifice, in violation of 18 U.S.C. § 1341.

### C. Manner and Means of the Conspiracy

5. The manner and means by which the defendant and her co-conspirators sought to accomplish the purpose of the conspiracy included, among other things:

    a. It was part of the conspiracy Camp would and did create and caused to be created materially false and fraudulent invoices submitted to Swisher and EAS purportedly from Lodge and Anchor or Pawn Shop, which invoices

6

requested payment for services and/or goods that had never been provided to Swisher or EAS.

  b. It was further part of the conspiracy that Camp would and did authorize payments from Swisher and EAS to Lodge and Anchor or Pawn Shop, as payment for the materially false and fraudulent invoices.

  c. It was further part of the conspiracy that Camp caused checks to be issued to Lodge and Anchor by Swisher and EAS in response to the false and fraudulent invoices, which checks were mailed to Lodge and Anchor's primary business address in Macon, Georgia via the U.S. Mail.

  d. It was further part of the conspiracy that J.G. would and did deposit the fraudulently obtained checks from Swisher and EAS made payable to Lodge and Anchor into Lodge and Anchor's bank accounts.

  e. It was further part of the conspiracy that after depositing the checks from Swisher, J.G. would and did transfer the majority of the fraudulently obtained funds to R.C. via check, cashier's check, or electronic funds from the Lodge and Anchor bank accounts, while withholding a small portion of the funds for himself.

  f. It was further part of the conspiracy that R.C. would and did deposit the Lodge and Anchor funds into BOA 2165, over which R.C. and Camp shared custody and control.

g. It was further part of the conspiracy that upon receipt of funds from Lodge and Anchor, Camp and R.C. would and did use the fraudulently obtained funds to purchase real property, vehicles, firearms, jewelry, and collectibles, among other things.

h. It was further part of the conspiracy that Camp caused a check to be issued to Pawn Shop by Swisher in response to the false and fraudulent invoices, which check was mailed to Pawn Shop's primary business address in Macon, Georgia via the U.S. Mail.

i. It was further part of the conspiracy that Pawn Shop used the check received from Swisher to credit R.C. for purchases made by him at Pawn Shop.

j. It was further part of the conspiracy that the conspirators would and did perform acts and make statements to hide and conceal and cause to be hidden and concealed the purpose of the conspiracy and the acts committed in furtherance thereof.

All in violation of 18 U.S.C. § 1349

## FORFEITURE

1. The allegations contained in Counts One and Two are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2. Upon conviction of a conspiracy of the violation of 18 U.S.C. §§ 1341 and/or 1343, in violation of 18 U.S.C. § 1349, the defendant, GRETCHEN MICHELE CAMP, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

3. The property to be forfeited includes, but is not limited to, the following:

    a. the sum of at least $2,047,975.98 which represents the proceeds obtained as a result of the violation charged in Count One;

    b. the sum of at least $3,651,067.03 which represents the proceeds obtained as a result of the violation charged in Count Two;

    c. Real Property located at 76437 Timber Creek Boulevard, Yulee, Nassau County, Florida 32097, including all improvements thereon and appurtenances thereto, more particularly described as:

    ALL THAT CERTAIN LAND SITUATE IN NASSAU COUNTY, FLORIDA, VIZ:

    LOT 125 OF TIMBER CREEK PLANTATION PHASE TWO, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 7, PAGE(S) 165 THROUGH 168, OF THE PUBLIC RECORDS OF NASSAU COUNTY

    Parcel No. 11-2N-26-2051-0125-0000;

    d. Real Property located at 27488 Highway 129 South, Metter, Candler County, Georgia 30439, including all improvements thereon and appurtenances thereto, more particularly described as:

ALL THAT CERTAIN LAND SITUTATE IN CANDLER COUNTY, GEORGIA, VIZ:

ALL THAT CERTAIN LOT, TRACT OR PARCEL OF LAND SITUATE, LYING AND BEING IN THE 1685TH G.M. DISTRICT OF CANDLER COUNTY, GEORGIA, CONTAINING 447.33 ACRES, MORE OR LESS, TOGETHER WITH ALL IMPROVEMENTS THEREON, DESIGNATED AS "PARCEL 1B" AS SHOWN ON THAT CERTAIN PLAT SURVEY DATED DECEMBER 31, 1998, PREPARED BY GEORGE WILLIAM DONALDSON, REGISTERED SURVEYOR, WHICH PLAT IS RECORDED IN PLAT BOOK 8, PAGE 85 IN THE OFFICE OF THE CLERK OF SUPERIOR COURT OF CANDLER COUNTY, GEORGIA AND WHICH PLAT OF SURVEY IS BE EXPRESS REFERENCE INCORPORATED HEREIN FOR DESCRIPTIVE AND ALL OTHER PURPOSES.

SAID PROPERTY IS BOUNDED, NOW OR FORMERLY, ACCORDING TO THE AFOREMENTIONED PLAT AS FOLLOWS: ON THE NORTH BY LANDS OF MARY SUE HENDRIX AND R. E. HENDRIX; ON THE EAST BY THE RUN OF FIFTEEN MILE CREEK; ON THE SOUTH AND SOUTHWEST BY THE CANOOCHEE RIVER AND LANDS OF LUCY HOLLOWAY AND LINDA H. ENGLISH AND BY LANDS OF J. T. HOLLOWAY; AND WESTERLY BY THE RIGHT OF WAY OF GEORGIA STATE HIGHWAY #129.

THIS IS THE SAME PROPERTY AS CONVEYED BY WARRANTY DEED DATED SEPTEMBER, 2005 FROM RICHARD BROOKS JONES AND PAMELA S. JONES TO SAVANNAH CAPITAL, LLC, RECORDED IN DEED BOOK 220, PAGE 624 IN THE OFFICE OF THE CLERK OF SUPERIOR COURT OF CANDLER COUNTY, GEORGIA.

LESS AND EXCEPT ANY PORTION OF THE ABOVE-DESCRIBED PROPERTY WITHIN THE RIGHT OF WAY OF GEORGIA STATE HIGHWAY #129.

        Parcel No. 047012001; and

e.    Real property located at 3240 S. Fletcher Avenue, Unit 445, Fernandina Beach, Nassau County, Florida 32034, including all improvements thereon and appurtenances thereto, more particularly described as:

ALL THAT CERTAIN LAND SITUATE IN NASSAU COUNTY, FLORIDA, VIZ:

CONDOMINIUM UNIT NO. 45, OF AMELIA BY THE SEA, A CONDOMINIUM, TOGETHER WITH AN UNDIVIDED INTEREST IN THE COMMON ELEMENTS, ACCORDING TO THE DECLARATION OF CONDOMINIUM DATED JUNE 28, 1973 AND RECORDED IN OFFICIAL RECORDS BOOK 148, PAGE 542, OF THE PUBLIC RECORDS OF NASSAU COUNTY, FLORIDA, AS AMENDED IN OFFICIAL RECORDS BOOK 195, PAGE 130, OFFICIAL RECORDS VOLUME 628, PAGE 1122, AND OFFICIAL RECORDS BOOK 685, PAGE 1288, OF THE AFORESAID PUBLIC RECORDS TOGETHER WITH ALL OF ITS APPURTENANCES ACCORDING TO THE DECLARATION

    Parcel No. 00-00-31-1010-0045-0000;

f.    $251,107.22 seized from BB&T Account Number 1110017871882, Account Holder: R.C.;

g.    a 2015 Ford Mustang GT Convertible, VIN 1FATP8FF2F5392385, registered in the names of Gretchen Michele Camp and R.C.

h.    a 2017 Ford F-150, VIN 1FTEW1EF1HFB35911, registered in the name of R.C.

i.    $25,000.00 paid to Dave Valentine Bail Bonds;

j.    $20,000.00 paid to Sheriff Mike Williams as bond money.

4.    If any of the property described above, as a result of any act or

omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c) ), and as incorporated by 18 U.S.C. § 982(b)(1).

    MARIA CHAPA LOPEZ
    United States Attorney

By: *[signature]*
    BONNIE A. GLOBER
    Assistant United States Attorney

By: *[signature]*
    FRANK TALBOT
    Assistant United States Attorney

By: *[signature]*
    AMANDA L. RIEDEL
    Assistant United States Attorney
    Deputy Chief, Criminal Division