FILED IN OPEN COURT
2/17/2021
CLERK, U S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

    v.                           CASE NO. 3:21-cr- 9- *BJD-JRK*

GRETCHEN MICHELE CAMP

### PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Maria Chapa Lopez, United States Attorney for the Middle District of Florida, and the defendant, GRETCHEN MICHELE CAMP, and the attorneys for the defendant, Bryan DeMaggio and Elizabeth White, mutually agree as follows:

### A.   Particularized Terms

1.   Counts Pleading To

The defendant shall enter a plea of guilty to Counts One and Two of the Information. Count One charges the defendant with Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349. Count Two charges the defendant with Conspiracy to Commit Mail Fraud in violation of 18 U.S.C. § 1349.

2.   Maximum Penalties

Each of Counts One and Two individually carries a maximum sentence of 20 years' imprisonment, a fine of not more than $250,000, or both *or twice the gross gain or twice the loss arising from the offense, whichever is greater;*

Defendant's Initials _GMC_                AF Approval _BJ_

imprisonment and fine, a term of supervised release of not more than three years, and a special assessment of $100. A violation of the terms and conditions of supervised release could result in another term of imprisonment of up to two years followed by another term of supervised release. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

If the defendant is sentenced to consecutive terms on Counts One *BB* and Two, the maximum cumulative penalty is up to 40 years' imprisonment, a fine of $500,000 *or twice the gross gain or twice the gross loss arising from the offense, whichever is greater, BC* or both the imprisonment and fine, a term of supervised release of not more than three years, and a special assessment of $200. A violation of the terms and conditions of supervised release could result in another term of imprisonment of up to four years followed by another term of supervised release. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3.    Elements of the Offense(s)

The defendant acknowledges understanding the nature and

Defendant's Initials 

2

elements of the offenses with which defendant has been charged and to which

defendant is pleading guilty.  The elements of Counts One and Two are:

First:   That two or more persons, in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan to commit wire fraud (Count One) and mail fraud (Count Two), as charged in the Information; and

Second:  the defendant knew the unlawful purpose of the plan and willfully joined in it.

4.     Indictment Waiver

Defendant will waive the right to be charged by way of indictment

before a federal grand jury.

5.     Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to

make full restitution in the approximate amount of $5,699,043.01 to Swisher

International, Inc., E-Alternative Solutions, or these entities' insurance

companies.  The defendant acknowledges, however, that the final restitution

amount will be determined by the Court at the time of sentencing.

6.     Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse

information is received suggesting such a recommendation to be unwarranted,

the United States will recommend to the Court that the defendant receive a

two-level downward adjustment for acceptance of responsibility, pursuant to

Defendant's Initials                     3

USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

7.    <u>Cooperation - Substantial Assistance to be Considered</u>

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the

Defendant's Initials                     4

charges in this case and other matters, such cooperation to further include a

full and complete disclosure of all relevant information, including production

of any and all books, papers, documents, and other objects in defendant's

possession or control, and to be reasonably available for interviews which the

United States may require.  If the cooperation is completed prior to

sentencing, the government agrees to consider whether such cooperation

qualifies as "substantial assistance" in accordance with the policy of the United

States Attorney for the Middle District of Florida, warranting the filing of a

motion at the time of sentencing recommending (1) a downward departure

from the applicable guideline range pursuant to USSG §5K1.1, or (2) the

imposition of a sentence below a statutory minimum, if any, pursuant to 18

U.S.C. § 3553(e), or (3) both.  If the cooperation is completed subsequent to

sentencing, the government agrees to consider whether such cooperation

qualifies as "substantial assistance" in accordance with the policy of the United

States Attorney for the Middle District of Florida, warranting the filing of a

motion for a reduction of sentence within one year of the imposition of

sentence pursuant to Fed. R. Crim. P. 35(b).  In any case, the defendant

understands that the determination as to whether "substantial assistance" has

been provided or what type of motion related thereto will be filed, if any, rests

solely with the United States Attorney for the Middle District of Florida, and

Defendant's Initials                     5

the defendant agrees that defendant cannot and will not challenge that

determination, whether by appeal, collateral attack, or otherwise.

     8.    Use of Information - Section 1B1.8

          Pursuant to USSG §1B1.8(a), the United States agrees that no

self-incriminating information which the defendant may provide during the

course of defendant's cooperation and pursuant to this agreement shall be used

in determining the applicable sentencing guideline range, subject to the

restrictions and limitations set forth in USSG §1B1.8(b).

     9.    Cooperation - Responsibilities of Parties

          a.    The government will make known to the Court and other

relevant authorities the nature and extent of defendant's cooperation and any

other mitigating circumstances indicative of the defendant's rehabilitative

intent by assuming the fundamental civic duty of reporting crime.  However,

the defendant understands that the government can make no representation

that the Court will impose a lesser sentence solely on account of, or in

consideration of, such cooperation.

          b.    It is understood that should the defendant knowingly

provide incomplete or untruthful testimony, statements, or information

pursuant to this agreement, or should the defendant falsely implicate or

incriminate any person, or should the defendant fail to voluntarily and

Defendant's Initials      6

unreservedly disclose and provide full, complete, truthful, and honest

knowledge, information, and cooperation regarding any of the matters noted

herein, the following conditions shall apply:

(1)    The defendant may be prosecuted for any perjury or

false declarations, if any, committed while testifying pursuant to this

agreement, or for obstruction of justice.

(2)    The United States may prosecute the defendant for

the charges which are to be dismissed pursuant to this agreement, if any, and

may either seek reinstatement of or refile such charges and prosecute the

defendant thereon in the event such charges have been dismissed pursuant to

this agreement.  With regard to such charges, if any, which have been

dismissed, the defendant, being fully aware of the nature of all such charges

now pending in the instant case, and being further aware of defendant's rights,

as to all felony charges pending in such cases (those offenses punishable by

imprisonment for a term of over one year), to not be held to answer to said

felony charges unless on a presentment or indictment of a grand jury, and

further being aware that all such felony charges in the instant case have

heretofore properly been returned by the indictment of a grand jury, does

hereby agree to reinstatement of such charges by rescission of any order

dismissing them or, alternatively, does hereby waive, in open court,

Defendant's Initials                     7

prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)    The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)    The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)    The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire

Defendant's Initials 

8



plea agreement null and void.

10.   <u>Forfeiture of Assets</u>

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant, or defendant's nominees.  The assets to be forfeited specifically include, but are not limited to, the sum of at least $2,047,975.98 in proceeds the defendant admits she obtained, as the result of the commission of the offense charged in Count One, to which the defendant is pleading guilty; and the sum of at least $3,651,067.03 in proceeds the defendant admits she obtained, as the result of the commission of the offense charged in Count Two, to which the defendant is pleading guilty, as well as:

a.   real property located at 76437 Timber Creek Boulevard, Yulee, Nassau County, Florida  32097, including all improvements thereon and appurtenances thereto, more particularly described as:

ALL THAT CERTAIN LAND SITUATE IN NASSAU COUNTY, FLORIDA, VIZ:

LOT 125 OF TIMBER CREEK PLANTATION PHASE TWO, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 7, PAGE(S) 165 THROUGH 168, OF THE PUBLIC RECORDS OF NASSAU COUNTY

Parcel No. 11-2N-26-2051-0125-0000;

Defendant's Initials

b.   real property located at 27488 Highway 129 South, Metter, Candler County, Georgia 30439, including all improvements thereon and appurtenances thereto, more particularly described as:

ALL THAT CERTAIN LAND SITUTATE IN CANDLER COUNTY, GEORGIA, VIZ:

ALL THAT CERTAIN LOT, TRACT OR PARCEL OF LAND SITUATE, LYING AND BEING IN THE 1685TH G.M. DISTRICT OF CANDLER COUNTY, GEORGIA, CONTAINING 447.33 ACRES, MORE OR LESS, TOGETHER WITH ALL IMPROVEMENTS THEREON, DESIGNATED AS "PARCEL 1B" AS SHOWN ON THAT CERTAIN PLAT SURVEY DATED DECEMBER 31, 1998, PREPARED BY GEORGE WILLIAM DONALDSON, REGISTERED SURVEYOR, WHICH PLAT IS RECORDED IN PLAT BOOK 8, PAGE 85 IN THE OFFICE OF THE CLERK OF SUPERIOR COURT OF CANDLER COUNTY, GEORGIA AND WHICH PLAT OF SURVEY IS BE EXPRESS REFERENCE INCORPORATED HEREIN FOR DESCRIPTIVE AND ALL OTHER PRUPOSES.

SAID PROPERTY IS BOUNDED, NOW OR FORMERLY, ACCORDING TO THE AFOERMENTIONED PLATS AS FOLLOWS: ON THE NORTH BY LANDS OF MARY SUE HENDRIX AND R. E. HENDRIX; ON THE EAST BY THE RUN OF FIFTEEN MILE CREEK; ON THE SOUTH AND SOUTHWEST BY THE CANOOCHEE RIVER AND LANDS OF LUCY HOLLOWAY AND LINDA H. ENGLISH AND BY LANDS OF J. T. HOLLOWAY; AND WESTERLY BY THE RIGHT OF WAY OF GEORGIA STATE HIGHWAY #129.

THIS IS THE SAME PROPERTY AS CONVEYED BY WARRANTY DEED DATED SEPTEMBER, 2005 FROM RICHARD BROOKS JONES AND PAMELA S. JONES TO SAVANNAH CAPITAL, LLC, RECORDED IN DEED BOOK 220, PAGE 624 IN THE OFFICE OF THE CLERK OF SUPERIOR COURT OF CANDLER COUNTY, GEORGIA.

10

Defendant's Initials 

LESS AND EXCEPT ANY PORTION OF THE
ABOVE-DESCRIBED PROPERTY WITHIN THE
RIGHT OF WAY OF GEORGIA STATE HIGHWAY
#129.

Parcel No. 047012001; and

c.    real property located at 3240 S. Fletcher Avenue, Unit
445, Fernandina Beach, Nassau County, Florida 32034,
including all improvements thereon and appurtenances
thereto, more particularly described as:
ALL THAT CERTAIN LAND SITUATE IN NASSAU
COUNTY, FLORIDA, VIZ:

CONDOMINIUM UNIT NO. 45, OF AMELIA BY THE
SEA, A CONDOMINIUM, TOGETHER WITH AN
UNDIVIDED INTEREST IN THE COMMON
ELEMENTS, ACCORDING TO THE DECLARATION
OF CONDOMINIUM DATED JUNE 28, 1973 AND
RECORDED IN OFFICIAL RECORDS BOOK 148,
PAGE 542, OF THE PUBLIC RECORDS OF NASSAU
COUNTY, FLORIDA, AS AMENDED IN OFFICIAL
RECORDS BOOK 195, PAGE 130, OFFICIAL
RECORDS VOLUME 628, PAGE 1122, AND
OFFICIAL RECORDS BOOK 685, PAGE 1288, OF THE
AFORESAID PUBLIC RECORDS TOGETHER WITH
ALL OF ITS APPURTENANCES ACCORDING TO
THE DECLARATION

Parcel No. 00-00-31-1010-0045-0000,

which assets were purchased or funded with proceeds of the offense or

offenses to which the defendant is to plead guilty.

In addition, the defendant specifically agrees and consents to the

administrative forfeiture of the following assets seized by the Federal Bureau

of Investigation:

Defendant's Initials                 11

a.   $251,107.22 seized from BB&T Account Number 1110017871882, Account Holder: Richard Everett Camp;

b.   a 2015 Ford Mustang GT Convertible, VIN 1FATP8FF2F5392385, registered in the names of Gretchen Michele Camp and Richard Everett Camp, Jr.; and

c.   a 2017 Ford F-150, VIN 1FTEW1EF1HFB35911, registered in the name of Richard Everett Camp, Jr.;

d.   $25,000.00 paid to Dave Valentine Bail Bonds and

e.   $20,000.00 paid to Sheriff Mike Williams as bond money.

The net proceeds from the forfeiture and sale of any specific assets will be credited to and reduce the amount the United States shall be entitled to forfeit as substitute assets pursuant to 21 U.S.C. § 853(p). Further, the defendant consents to the filing of a motion by the United States for immediate entry of an Order of Forfeiture of Proceeds and Preliminary Order of Forfeiture as to direct assets.

The defendant acknowledges and agrees that (1) the defendant obtained $2,047,975.98 as a result of the commission of the offense charged in Count One; (2) the defendant obtained $3,651,067.03 as a result of the commission of the offense charged in Count Two; and (3) as a result of the acts and omissions of the defendant, the proceeds not recovered by the United States through the forfeiture of the directly traceable assets listed herein have

Defendant's Initials 

12

been transferred to third parties and cannot be located by the United States upon the exercise of due diligence. Therefore, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained, as the result of the offenses of conviction and, further, the defendant consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offenses.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule

Defendant's Initials                     13

32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered.  In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture (including substitute assets) and to transfer custody of such property to the United States before the defendant's sentencing.  To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years.  The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.  The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.  The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

Defendant's Initials                               14

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns

Defendant's Initials _____

15

until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

**B.**   **Standard Terms and Conditions**

    1.    Restitution, Special Assessment and Fine

       The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement.  The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

       On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013.

Defendant's Initials 

16

The defendant understands that this agreement imposes no limitation as to fine.

2.      Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.      Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.      Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any

Defendant's Initials                         17

misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.    Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that her financial statement and disclosures will be complete, accurate and truthful and will include all assets in which she has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information

Defendant's Initials 

18

concerning the defendant, for the purpose of making any recommendations to

the Court and for collecting any assessments, fines, restitution, or forfeiture

ordered by the Court.  The defendant expressly authorizes the United States

Attorney's Office to obtain current credit reports in order to evaluate the

defendant's ability to satisfy any financial obligation imposed by the Court.

6.    Sentencing Recommendations

It is understood by the parties that the Court is neither a party to

nor bound by this agreement.  The Court may accept or reject the agreement,

or defer a decision until it has had an opportunity to consider the presentence

report prepared by the United States Probation Office.  The defendant

understands and acknowledges that, although the parties are permitted to

make recommendations and present arguments to the Court, the sentence will

be determined solely by the Court, with the assistance of the United States

Probation Office.  Defendant further understands and acknowledges that any

discussions between defendant or defendant's attorney and the attorney or

other agents for the government regarding any recommendations by the

government are not binding on the Court and that, should any

recommendations be rejected, defendant will not be permitted to withdraw

defendant's plea pursuant to this plea agreement.  The government expressly

reserves the right to support and defend any decision that the Court may make

Defendant's Initials                                        19

with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.    Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.    Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this



office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9. <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10. <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront

Defendant's Initials 

21

and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.   <u>Factual Basis</u>

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.



12.   <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.   <u>Certification</u>

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this ___17___ day of ~~August~~ February, 2020.

MARIA CHAPA LOPEZ
United States Attorney


GRETCHEN MICHELE CAMP
Defendant   1/25/21

BONNIE GLOBER
Assistant United States Attorney


BRYAN DeMAGGIO   1/25/21
Counsel for Defendant

FRANK TALBOT
Assistant United States Attorney


ELIZABETH WHITE   1/25/21
Counsel for Defendant

AMANDA L. RIEDEL
Assistant United States Attorney
Deputy Chief, Criminal Division


Defendant's Initials

23

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                CASE NO. 3:21-cr-9 -BJD-JRK

GRETCHEN MICHELE CAMP

PERSONALIZATION OF ELEMENTS

Count One

1.     Do you admit that from approximately September 2014, through at least October 2018, in the Middle District of Florida and elsewhere, you and another person or persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit wire fraud, as charged in the Information?

2.     Do you admit you knew the unlawful purpose of the plan and willfully joined in it?

Count Two

1.     Do you admit that from in or about at least November 2015, through in or about December 2018, in the Middle District of Florida, and elsewhere, you and another person or persons, in some way or manner, agreed

Defendant's Initials 

to try to accomplish a common and unlawful plan to commit mail fraud, as charged in the Information.

2.    Do you admit that you knew the unlawful purpose of the plan and willfully joined in it?

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                        CASE NO. 3:2∅-cr- 9- BJD-JRK

GRETCHEN MICHELE CAMP

FACTUAL BASIS

From in or around 2009 through in or around December 2018, the

defendant was employed by Swisher International, Inc. (Swisher) as a Senior

Tax Manager. Swisher, located in Jacksonville, Florida, manufactures,

produces, and sells a variety of products domestically and internationally to

include cigars and other tobacco products. Swisher was required to calculate

and pay federal excise taxes on cigars before shipping them to customers. If

cigars that Swisher shipped to its customers were damaged, withdrawn, or

otherwise not sold, the previously paid federal excise taxes were refundable to

Swisher. The excise taxes were collected by the National Revenue Center

(NRC) within the United States Department of the Treasury, Alcohol and

Tobacco Tax and Trade Bureau (TTB). The defendant's job responsibilities

included preparing and submitting claim forms relating to the refund to

Swisher of federal tobacco excise taxes and also to approve certain

Defendant's Initials                     26

payments to be made by both Swisher and its sister company, E-Alternative Solutions (EAS).

A refund of tobacco excise taxes is requested on a claim form on which a filer can elect to receive a tax refund in the form of a future tax credit or a cash refund paid directly to Swisher's account. Swisher historically chose to receive future tax credits.

From approximately September 2014 through October 2018, the defendant, and her co-conspirator, R.C., agreed to materially alter Swisher's claim forms in order to divert excise tax refunds owed to Swisher to their joint bank accounts. The conspirators then agreed to share in the proceeds of the conspiracy and take actions to conceal their crimes.

Initially, the defendant would fill in the requisite information on the Swisher tax refund claim form and check the box labeled "Refund of Tax." The defendant would then indicate on the form that the Department of Treasury should remit the refund to a personal bank account she shared with R.C. - a Bank of America account ending in 2165 (BOA 2165). The defendant did this without Swisher's knowledge or consent.

As the scheme went on, the defendant changed her methods. After securing a signature from her supervisor on the correctly filled-in claim form, the defendant would materially alter the claim form by removing the check

Defendant's Initials                 27

from the box labeled "Allowance of Credit for Tax" and checking the box labeled "Refund of Tax." The defendant would then direct the refund to her joint bank account, BOA 2165.

For example, on or about October 16, 2015, the defendant caused the Department of the Treasury to wire transfer $393,107.08 in excise tax refunds due to Swisher, to BOA 2165, the defendant's joint bank account. The Department of the Treasury transmitted the funds on or about December 15, 2015, via an interstate wire transfer that was ultimately deposited into the defendant's and her coconspirators BOA 2165 account in the Middle District of Florida. The defendant had no legitimate basis to receive this refund or any other of Swisher's excise tax refunds, and she did so without Swisher's or EAS's knowledge or consent.

The defendant submitted 33 separate claim forms to the NRC on behalf of Swisher for a refund of excise taxes. On 32 of the claim forms, the defendant caused the Department of the Treasury to wire tax refunds totaling $1,602,638.31 across state lines to her joint bank account BOA 2165 in the Middle District of Florida. For the remaining claim, the defendant directed the Department of the Treasury to transmit via interstate wire $445,337.67 into a PNC bank account number ending in 8074 (PNC 8074), a joint account the defendant maintained with co-conspirator R.C. In total, the defendant

Defendant's Initials 

28

and her co-conspirator, R.C., defrauded Swisher of $2,047,975.98 in the conspiracy involving the tobacco tax refunds.

The co-conspirators initially conducted the wire fraud scheme under a ruse that the defendant was receiving bonuses from Swisher; even though her actual bonuses were paid annually in the form of a $1,200 to $2,000 check from Swisher to the defendant, rather than the large sums which were wired to BOA 2165 from TTB. R.C. controlled the joint finances between the defendant and himself. R.C. encouraged the defendant to take money from Swisher and often asked when the next wire transfer would be coming. R.C. frequently stated to the defendant that he needed more money so he could quit his job and find meaningful employment that he enjoyed. At other times, he stated he needed to pay off the mortgage and other recurring debts for his happiness. After several of the Swisher tax refunds were stolen an wired into BOA 2165, R.C. did in fact quit his job, used the stolen proceeds to pay off the mortgage and debts, and made significant material purchases, funding R.C.'s lifestyle. In mid-2016, the defendant told R.C. that the tax refunds would be stopping because of a TTB audit. R.C. responded by asking when the checks would resume and asked if Swisher could write a check to an auto repair company. R.C. made other suggestions as to companies R.C. would have access to, such as the auto repair company, from which the defendant and

Defendant's Initials 

29

R.C. might be able to be receive Swisher's checks. These discussions between R.C. and the defendant eventually led to the fraudulent invoice scheme described in Count Two.

From in or about November 2015 continuing through approximately December 2018, the defendant and her co-conspirators R.C. and J.G. agreed to create false and fraudulent invoices submitted to Swisher. These invoices, submitted to Swisher and EAS, made false claims that the victim companies owed funds to Lodge and Anchor LLC (Lodge and Anchor), a pawn shop in Macon, Georgia (Pawn Shop), and an auto repair business. In truth and in fact, Lodge and Anchor, the Pawn Shop, and the auto repair business had no dealings with Swisher or EAS. In her position, the defendant approved payments from Swisher to these entities, which were normally sent from Swisher and EAS in the Middle District of Florida to Macon, Georgia via the U.S. Mail and United Parcel Services (UPS). J.G. then deposited the checks and distributed the proceeds to the defendant and R.C.

For example, on or about January 25, 2018, the conspirators generated a false and fraudulent invoice purportedly from Lodge and Anchor claiming that EAS owed it $127,651.28 for services that were not rendered to EAS. The fraudulent invoice claimed that EAS owed Lodge and Anchor for goods and services such as trade show set-up and breakdown costs, materials and labor

Defendant's Initials 

30

for the construction of booths, marketing expenses, and artwork design for brochures. The defendant oversaw the approval of the payment to satisfy the fraudulent invoice.   As a result, on or about February 2, 2018, EAS issued a check to Lodge and Anchor for $127,651.28.  The check was sent via UPS from EAS in Jacksonville, Florida to J.G.'s home address in Macon, Georgia. J.G. deposited the check into an account belonging to Lodge and Anchor on or about February 5, 2018, and then on or about February 7, 2018, J.G., as remitter, purchased a cashier's check in the amount of $120,000.00, made payable to R.C..  The check was deposited into BOA 2165 on or about February 7, 2018.

The defendant and her co-conspirators submitted or caused to be submitted 48 fraudulent invoices from Lodge and Anchor to Swisher and 10 fraudulent invoices from Lodge and Anchor to EAS.  The defendant and her co-conspirators also caused payment of the invoices to be made by Swisher and EAS.  Checks representing payment for the Lodge and Anchor invoices were mailed by either U.S. mail or UPS to Lodge and Anchor's business address in Macon, Georgia, which was also J.G.'s home address. In exchange, J.G. kept a small amount of the fraudulent proceeds and transmitted the rest to R.C. and the defendant.

The defendant and her co-conspirators submitted or caused to be



submitted two fraudulent invoices from Pawn Shop, claiming managerial and outside contract labor costs. The defendant and her co-conspirators caused Swisher to pay the Pawn Shop a total of $126,260 by check. The Pawn Shop never provided any goods or services to Swisher or EAS, but instead applied the fraudulently obtained funds to items purchased by R.C., including numerous firearms.

The defendant and her co-conspirators submitted or caused to be submitted nine fraudulent invoices from the auto repair business, claiming refurbishment of office furniture. The defendant and her co-conspirators caused Swisher to pay the auto repair business a total of $157,882.06 through nine checks. Most of these checks were hand delivered directly from the defendant to R.C., although at least one of the checks was placed in the U.S. Mail and mailed to the auto repair business in Jacksonville. The auto repair business never rendered any services to Swisher or EAS.

The defendant and her co-conspirators, through the fraudulent invoice conspiracy, defrauded Swisher and EAS of a total of $3,651,067.03, which consisted of $3,366,924.97 to Lodge and Anchor; $126,260.00 to the Pawn Shop; and $157,882 to the auto repair business, all for goods and services never rendered to Swisher or EAS.

Defendant's Initials 

32

The defendant and co-conspirator, R.C. used the proceeds from the wire fraud and mail fraud conspiracies to purchase real properties located at 3240 S. Fletcher Avenue, Unit 445, Fernandina Beach, Florida, 27488 Highway 129 South, Metter, Georgia and to pay-off the mortgage on 76437 Timber Creek Boulevard, Yulee, Florida. The defendant, along with her co-conspirator, R.C. also used the proceeds of the wire fraud and mail fraud conspiracies to purchase a 2015 Ford Mustang GT Convertible, VIN 1FATP8FF2F5392385, and a 2017 Ford F-150, VIN1FTEW1EF1HFB35911. Further, $251,107.22 in conspiracy proceeds were seized from BB&T Account Number ending in 1882. Additionally, the defendant made the following bail bond payments with conspiracy proceeds: $25,000.00 paid to Dave Valentine Bail Bonds and $20,000.00 paid to Sheriff Mike Williams. The defendant does not dispute that the funds used to post her bond were stolen funds. However, defendant states that R.C. told her the funds came from his father and would have to be repaid. The defendant also states that as a result of that representation, her parents wrote a check to R.C.'s father for what they believed was the reimbursement for a portion of the bond money posted.

Defendant's Initials _____

33